IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JERRY SIERRA,

       Plaintiff,

vs.                                                                                     Civ. No. 04-0001 MV/WDS

INTEL CORPORATION,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Intel Corporation's Motion for Summary Judgment, filed July 26, 2004, **[Doc. No. 20]**, and Defendant Intel Corporation's Motion to Strike, filed July 26, 2004, **[Doc. No. 18]**. The Court, having considered the motions, briefs, relevant law, and being otherwise fully informed, finds that the motion to strike is well-taken and will be **GRANTED** and the motion for summary judgment is well-taken and will be **GRANTED in part**.

**BACKGROUND**

Plaintiff Jerry Sierra began working at Intel on April 19, 1994, as a Project Manager in Intel's Rio Rancho, New Mexico facility.[1] In his position, Plaintiff was a member of Intel's Corporate Services ("CS") Construction Department, which was responsible for performing construction work and building improvements at Intel's various facilities.

In October 2000, after years of successful performance evaluations, Plaintiff's midyear

---

[1] On Defendant's Motion for Summary Judgment, the facts must be taken in the light most favorable to Plaintiff; accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiff's evidence.

performance evaluation rated him as "successful" with a "slower trend." A "slower trend" meant that Plaintiff was not performing at the level of his peers. Plaintiff was instructed to improve his leadership abilities and to follow through with projects. Plaintiff believed he was unfairly evaluated and refused to sign the appraisal. Plaintiff requested that Human Resources investigate whether his evaluation should have been higher. Human Resources investigated and determined that Plaintiff was properly evaluated.

In April 2001, Plaintiff received his annual performance appraisal, which again rated him as "successful" with a "slower trend." The appraisal indicated that Plaintiff was ranked in the bottom quartile of Project Managers in his peer group and that Plaintiff needed to improve his communication skills as well as his technical and leadership skills. In April 2002, Plaintiff received his next annual performance evaluation. Again, Plaintiff was rated in the bottom of his peer group and his areas for improvement included leadership skills, project management skills, communication skills, and knowledge of other functional areas. While Plaintiff disagrees with his performance appraisals, he does not believe that they were a result of any discrimination based on national origin.

In 2001, Intel suffered financial losses due to a downturn in business and was forced to reduce its workforce through voluntary and involuntary separation programs. The 2001 reductions-in-force were insufficient in light of the economic conditions, and, in July 2002, Intel announced that it would reduce staffing by an additional 4,000 employees, including employees in the CS Construction Department in various locations throughout the United States.

In August 2002, as part of its effort to reduce its employee headcount, Intel offered employees a voluntary separation program where an employee could elect to resign and receive a

severance package. The voluntary separation program did not result in a sufficient reduction of headcount and Intel implemented a redeployment program.

Intel's redeployment program is designed to help employees whose positions have been eliminated seek alternative positions elsewhere within Intel. In implementing a redeployment, Intel first decides which facilities and departments will be affected. The managers of the affected departments and facilities determine how many managers and hourly employees, in what location, and with what skills ("critical skills") will remain in the affected departments post-redeployment. After these determinations are made, department managers at each affected site rank and rate employees in affected positions on their critical skills.

In the 2002 redeployment, the CS Construction Department was forced to reduce the number of employees at its facilities in Arizona, California, Colorado, Massachusetts, New Mexico, and Oregon. Along with other positions, Intel determined that the CS Construction Department in New Mexico should eliminate three Project Managers. Mark Schaeffer, the CS Construction Department Manager in New Mexico, and ten other CS Construction Department Managers at the other Intel facilities affected by the redeployment created a list of "critical skills" they deemed necessary for post-redeployment CS Construction Department employees to possess. The list of critical skills included organizational planning and discipline, communications, customer orientation/teamwork, stress tolerance and ambiguity, technical expertise, and management.

After the list of critical skills was developed, Schaeffer and his immediate subordinates gathered to rank and rate the employees in the Rio Rancho CS Construction Department, including the Project Managers, on their critical skills. Plaintiff was ranked in the bottom three of

all Project Managers.[2]  Based on these ratings, Plaintiff and two other Project Managers were selected for redeployment.  Of the three Project Managers selected for redeployment, two were Hispanic.  The Project Managers selected to remain in the Rio Rancho CS Construction Department were both Hispanic and non-Hispanic.

On September 27, 2002, Plaintiff was informed that he had been selected for redeployment.  Plaintiff was given two options.  Under the first option, he could elect to immediately separate employment and receive four months salary, twelve weeks of enhanced separation pay, career transition services for three months, and four months of tax-protected COBRA payments for medical and dental health insurance.  Under the second option, Plaintiff could enter the "redeployment pool," which would allow him to continue to receive his regular salary for two months while he conducted an internal job search for another Intel position.  While in the redeployment pool, Plaintiff could receive up to $2,000 of job training support and three months of career transition services.  If Plaintiff did not successfully obtain another position at Intel at the end of the two-month period, he would be terminated and receive two months of salary and ten weeks of separation pay.

Prior to selecting either redeployment or immediate separation, Schaeffer informed Plaintiff that two jobs were going to open up in the CS Construction Department and encouraged Plaintiff to apply for them.  On October 4, 2002, Plaintiff, relying on Schaeffer's representation that two jobs were going to open up in the CS Construction Department, elected to enter the

---

[2] In his brief, Plaintiff asserts that Intel has not presented any evidence that Plaintiff actually received one of the bottom three scores on the critical skills assessment.  Plaintiff, however, testified that he did not dispute his critical skills score.  Furthermore, Intel has submitted affidavits from Christine Frutschy and Mark Schaeffer stating that Plaintiff received one of the lowest three scores.

4

redeployment pool. Plaintiff was transferred out of the CS Construction Department and made an employee of the Redeployment Department.

During this time, Intel had in place an Internal Transfer Process whereby any new or vacated internal positions within the CS Construction Department, with minimal exceptions, could only be filled by current CS Construction Department employees. This policy was designed to achieve a net reduction in total headcount by not allowing employees outside the CS Construction Department to transfer into the CS Construction Department. The two positions referenced by Schaeffer were positions that, pursuant to the Internal Transfer Process, could only be filled by existing CS Construction Department employees. Consequently, these positions were not advertised to the redeployment pool and were ultimately filled by two Caucasian CS Construction Department employees from other regions.

During the redeployment period, Plaintiff applied for three other positions at Intel but was not selected for the positions. Plaintiff does not believe that his national origin was a factor in his failure to be selected for these positions. Plaintiff did not obtain another position within Intel during his redeployment period and was separated on December 10, 20002. Upon separation, Plaintiff received fourteen weeks of severance pay as well as a $1,700 computer allowance, career transition services, and unemployment compensation benefits in the amount of $10,249.

Plaintiff subsequently filed an EEOC charge alleging that he was discriminated against based on his national origin and age.[3] Specifically, the EEOC charge asserted that Plaintiff was not selected for the two CS Construction Department jobs during his redeployment period because of his national origin and age. In a letter dated October 1, 2003, the EEOC dismissed its

---

[3] Plaintiff subsequently dropped his age discrimination claim.

investigation of Plaintiff's charge. Plaintiff subsequently filed his Complaint in this action alleging discrimination based on national origin (Count I), breach of an express contract of employment (Count II) and breach of an implied contract of employment (Count III).

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file,

designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

**I.    Defendant's Motion to Strike**

Defendant has moved to strike three of Plaintiff's proposed changes to his deposition testimony.  Defendant contends that Plaintiff's proposed changes are improper attempts to materially alter the substance of Plaintiff's testimony to create sham issues of fact.  Plaintiff did not file a response to this motion.  Failure to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.  D.N.M.LR-Civ. 7.1(b).  In the absence of a response in opposition, Defendant's motion will be granted.

**II.    Defendant's Motion for Summary Judgment**

    A.    Discrimination Claim

        i.    Disparate Impact Claim

In his Complaint, Plaintiff contends that he was discriminated against based on his national origin under a disparate treatment theory and a disparate impact theory. Defendant argued, and Plaintiff admitted, that he did not exhaust his administrative remedies on the disparate impact claim. Accordingly, Plaintiff's disparate impact claim will be dismissed without prejudice.

        ii.    Disparate Treatment Claim

A disparate treatment claim exists when an employer treats an individual less favorably than others because of his or her protected status. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977). Because disparate treatment is a form of intentional discrimination, the plaintiff must prove that his employer acted with a discriminatory intent or motive. *See Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1424 (10th Cir. 1993).

In this case, Plaintiff has no direct evidence of national origin discrimination and, therefore, must rely on the indirect burden-shifting methodology of proof articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). Under the *McDonnell-Douglas* burden-shifting method, a plaintiff must first establish a *prima facie* case. In an employment discrimination case, a plaintiff may establish a *prima facie* case by showing that: (1) he is a member of a protected group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) he was treated less favorably than other employees. *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998). The fourth element may be established through circumstantial evidence that the plaintiff was treated less favorably

than non-protected employees. *Id*.

Plaintiff's case fails on the fourth prong. Plaintiff has come forward with no evidence that he was treated less favorably than other employees. The record shows that Intel managers selected the critical skills necessary for employees to remain in the CS Construction Department. In his brief, Plaintiff argues that the "critical skills" criteria was developed for the express purpose of targeting Plaintiff and other Hispanic employees for deployment. This argument is contrary to Plaintiff's deposition testimony. Plaintiff testified that the critical skills selected were appropriate for Intel to use to evaluate employees:

> Q. So do you believe it was incorrect or unfair for the company to evaluate employees on organizational planning and discipline skills?
> A. No.
> Q. How about on communications?
> A. No.
> Q. How about customer orientation and teamwork?
> A. No.
> Q. Stress tolerance and ambiguity?
> A. No.
> Q. Management?
> A. No.

The managers then evaluated each employee and ranked them based on these skills. While Plaintiff believes his skills were improperly evaluated, Plaintiff testified that he does not believe that his managers were motivated by his national origin to wrongly assess his critical skills:[4]

---

[4] In his deposition, Plaintiff testified that Richard Hans discriminated against him based on his national origin. When questioned by counsel, however, Plaintiff testified that he had no evidence that Hans alleged failure to represent him correctly was due to his national origin:

> Q. First with Richard Hans, how do you contend that he discriminated against you on the basis of your national origin?
> A. He's my supervisor and -- and basically didn't represent me correctly during the ranking and rating for selecting who was going to be on redeployment.
> \* \* \*

> Q. Did you believe that your evaluation had anything to do with your national origin?
>
> *Plaintiff's Counsel*: Objection to the form. The complaint speaks for itself.
>
> A. No.
>
> * * *
>
> Q. So are you contending that the people who evaluated you on the skill sets were motivated to downgrade you on the skill sets because of your national origin?
>
> *Plaintiff's Counsel*:   Objection to the form of the question.
>
> A. No.

Plaintiff admits that the critical skills were appropriate criteria and that they were not applied to him in a discriminatory fashion. Plaintiff has come forward with no evidence that he was held to a different standard or treated differently than similarly situated non-Hispanics during the rating of critical skills. Plaintiff, however, complains that the critical skills categories were "subjective." Plaintiff believes Intel should have used performance evaluations to determine which employees to redeploy. Plaintiff's position is unavailing. First, it is not impermissible for an employer to use subjective criteria. *See, e.g., Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000) ("The claim by [plaintiff] that somehow the use of subjective

---

> Q. What evidence do you have that he didn't represent you correctly?
> A. I was -- I was laid off.
>
> * * *
>
> Q. Do you have any evidence that he didn't give you a higher evaluation because of your national origin?
> A. No, no.
> Q. Do you have any other evidence that he did anything against you because of your national origin?
> A. No.

factors renders [a decision] *per se* discriminatory is meritless."). Furthermore, whether the critical skills criteria were subjective is irrelevant because Plaintiff has already testified that he does not believe the critical skills analysis was used to discriminate against him. Second, Plaintiff's performance evaluations over the prior year and a half indicated that he was not performing at the level of his peers and his last performance evaluation rated him in the bottom quartile of the fifteen project managers in his peer group. Thus, there is no reason to assume that Plaintiff would have fared any better under a ranking based on performance appraisals.

Plaintiff also alleges that he was discriminated against when he returned from a ten-week sabbatical in 2001 and was not put back into his previous position but, rather, was involuntarily placed into another position. Plaintiff alleges that non-Hispanics were permitted to return to their former positions when they returned from sabbaticals. According to Plaintiff, if he had been returned to his former position, he would not have been affected by the 2002 redeployment. While it is unfortunate that this change in position potentially subjected Plaintiff to a redeployment, Plaintiff has come forward with no evidence that the decision to place him in a new position was motivated by any discriminatory animus or that he was intentionally placed into this position to subject him to the redeployment. In fact, Plaintiff's testimony is to the contrary:

> Q. Are you contending that the decision to put you in this other project, the PSSS project, was motivated by your national origin?
>
> A. No.

Plaintiff also contends that he was discriminated against when he was not permitted to apply for the two CS Construction Department positions that opened during his redeployment period. It is undisputed, however, that pursuant to Intel policy, these positions were only

11

available to CS Construction Department employees. Plaintiff, as an employee of the Redeployment Department, was ineligible to apply. In accordance with Intel policy, the positions were filled by existing CS Construction Department employees. Plaintiff was not treated any differently than any other non-CS Construction Department employee and Plaintiff's ineligibility to apply for these positions cannot be considered evidence of disparate treatment.

Finally, Plaintiff cites to a list he made of employees he knows were selected for redeployment. Plaintiff contends that this list shows that Hispanics were targeted for redeployment. Plaintiff's evidence is insufficient to demonstrate that he was treated differently than other similarly situated non-Hispanics. Plaintiff's anecdotal list, which is based solely on his personal knowledge, is admittedly incomplete. Most of the employees on his list are not Project Managers and Plaintiff does not know the race of many of the individuals on the list.

Plaintiff has come forward with no evidence that he was treated differently than other similarly situated non-Hispanic Project Managers during the redeployment process. Plaintiff, therefore, has failed to state a *prima facie* case of national origin discrimination and Intel is entitled to summary judgment on this claim as a matter of law.

  iii. State Law Claims

Plaintiff's remaining claims are state common law claims alleging breach of express and implied contracts of employment. Under 28 U.S.C. § 1367, this Court has discretion to dismiss claims supported only by supplemental jurisdiction after the dismissal of all claims over which it had original jurisdiction. The Tenth Circuit has stated that a district court has discretion to try state claims in the absence of any triable federal claims. *See Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). That discretion, however, is to be

exercised only "in those cases in which given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id*. Moreover, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Id*.

The Court finds no compelling reason to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Intel Corporation's Motion to Strike, filed July 26, 2004, **[Doc. No. 18]**, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Intel Corporation's Motion for Summary Judgment, filed July 26, 2004, **[Doc. No. 20]**, is **GRANTED in part**. Summary judgment is granted in Defendant's favor on Plaintiff's discrimination claim (Count I).

**IT IS FINALLY ORDERED** that Plaintiff's state law claims (Counts II and III) are

hereby dismissed without prejudice.

       Dated this 3rd day of November, 2004.

 

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE


Attorneys for Plaintiff:
       Michael E. Mozes, Esq.

Attorneys for Defendant:
       Duane C. Gilkey, Esq.
       Carol Dominguez Shay, Esq.